The opinion of the court was delivered by
Bermudez, O. J,
This is an action in damages for bodily injury unstained, in consequence of the alleged negligence of employés for. whose acts the def&ndant is liable.
The plaintiff complains that, on the 16th of January, 1888, at 4 A. m., while she was a passenger on a sleeper attached to a train of the company, a wheel from under a coach in front of that on which she was riding, broke; that her sleeper became uncoupled, derailed and capsized; that, in the upsetting she received two cuts above the knuckle bone from, the window glass; that she became unconscious, suffered considerably, was subjected to humiliations, had to take care of her injuries, was disabled for months and that scars remain and permanent disfigurement of her hand.
The charge is that the company failed to provide for careful servants, safe conveyance and to use extraordinary diligence in the management and running of the train; that the accident occurred through the defectiveness of the fastenings and lack of durable appliances in the cars and giving way of the trucks and other defects and acts of negligence in the direction of the train, and damages to the extent of $2500 are claimed as pecuniary compensation.
In defence, the company contends, that it did provide a safe conveyance with proper equipments, as far as it could do so, with the exercise of the utmost care and skill, and that the accident was solely due to a latent defect in a wheel, which no human care or skill could have detected or prevented.
From a judgment allowing plaintiff $750, defendant appeals.
*675 The District Judge succinctly recites the following facts found by him:
“The cause of the accident was the breaking of the wheel at a point about 135 miles from New Orleans. It had been carefully inspected at Lafayette and showed no latent defects. The track was in good order. The train was properly equipped, the running gear and fastenings of the ear were in good condition. The train was not running at an unusual rate of speed. The wheel accidentally broke from some hidden defect or cause, which human care and foresight could not prevent.”
We concur in this finding, but differ from the reasons assigned conducive to an allowance of damages, in which our learned brother labors to show that the conductor did not, after the breaking' of the wheel, stop the train, and that, had he done so, the accident would not have happened and the plaintiff would not have been injured. Under this theory, we think, the duty of the conductor was extended too far.
There can be no doubt that, as it is shown, the wheel was manufactured in a proper manner by respectable manufacturers, and that like it, the axle was without blemish; that as no defect was revealed after the usual examination and test on the night of the accident and shortly before its occurrence, no fault could be imputed to the defendant, from which liability for the injury sustained could be attached.
Hutchinson on Com. Car. 497, 508; 85 Ill. 80; 38 Mich. 546-8; 14 N. Y. 481.
The plaintiff does not appear to contest the condition of things found by the District Judge or the law applicable to it; but her contention is that, as the conductor of the train had been seasonably warned by a passenger who had heard an unusual loud noise and felt a jolt which had made the coach jump, arousing him, and who had asked him to see about it, this official did not examine and stop the train, and that had he done so, he would have discovered the broken wheel, provided against the consequent danger and thus would have prevented the accident.
The law seems clear that, when the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, there ought to be a consciousness of the facts which raise the duty on the part of the person charged with its performance.
Railways are not liable for a mistaken exercise of judgment on *676 the part of their employés in an emergency, nor for a failure on the part of their servants to act with the utmost promptitude when the circumstances are such as to afford no time for deliberation.
Patterson’s Railway Accidents, p. Ill, Sec. 115.
In such cases, the party charging the omission must prove that the duty alleged existed, that the omission constituted a legal fault and that, had it been performed, the accident would not have happened.
The conductor, heard as witness, said that, upon the statement of the passenger, he immediately went back in the car, saw nothing unusual, stood on'the platform, looked outside and discovered nothing; that he'had just stepped into the second-class coach, when he saW the bell line jerk, and that he pulled the bell to stop; that he went back and got the passengers out of the car.
He also says that, in passing over a switch or a frog, a train makes a loud noise and that it is not an unusual thing for passengers to become alarmed and to report to him, in such cases, when there is no occasion for fear.
It is evident that, had the conductor stopped the train, when the passenger told him of what he had heard and felt, and had he looked into the exciting condition of things, he could have discovered the broken wheel, and the accident would not have occurred; but the question is not to be viewed in that light or from that standpoint.
The test of liability, in most cases, is not whether the conductor omitted doing something he could have done, and which, if done, would have prevented the injury; but, whether he abstained from doing anything which, in the exercise of ordinary care and prudence, he consciously oüght to have done and did not do, the omission of which caused the accident producing the injury.
The real and only question in the case is simply whether the conductor was conscious of the condition of things and was bound, on the mere statement of the passenger, to have stopped the train when he saw no occasion for it.
It appears from his statements and from the testimony heard, that he did not know that any accident had happened; that as soon as the passenger told him what he did, he took steps to inquire and ascertain, and afterward discovered no cause of apprehension. He was not therefore conscious.
There is nothing to show who that passenger was; whe.ther he belonged to the ordinary class of travelers, or whether he was an *677 habitué or an experienced railroad man, to whose statements or warnings in such a case serious significance could be attached.
The proposition is inadmissible that, on the simple statement of any first coming passenger that he has heard a loud noise and felt a jolt, a conductor, who has not thus heard and felt, who after instant search and examination discovers no subject of apprehension, is bound to stop a train at night for special and thorough inspection of its different parts.
Were it so, there is no telling how often he would have to do so on the journey.
We are therefore of opinion that, as it was not, under the circumstances, the duty of the conductor to have stopped the train, the company is not responsible for his failure to have done so, and that the injury sustained is damnum absque injuria, particularly as it consisted, as the plaintiff herself declares, of fright and a slight cut.
It is therefore ordered and decreed that the judgment appealed from be reversed, and that there now be judgment for defendant with costs in both courts.